BOLIN, Judge.
This is a suit by plaintiff for $3,830.49 representing the price of lumber and other building materials sold and delivered to defendant. Defendant reconvened claiming he had been overcharged on numerous items and had not been paid or properly credited in connection with other transactions with plaintiff. From a judgment in favor of plaintiff for the amount sued for, subject to a credit of $1,535.29 as per stipulation between the parties, defendant has appealed.
The record reveals defendant was sued for $3,830.49, with interest, as the balance due for building materials sold and delivered to defendant for the construction of buildings on Lots 71 and 72 of Thrift Subdivision in Shreveport. Defendant denied all the allegations of plaintiff’s petition, and reconvened alleging plaintiff had overcharged him in the sum of $403.80, which amount represented the difference between plaintiff’s invoice prices and those of Lou-zan Lumber Company, it having been agreed the prices of plaintiff would not exceed those of Louzan. Defendant further alleged he was entitled to a credit for constructing a house on Lot 28-J under an agreement whereby defendant would receive the net profit when this property was sold. Mr. R. N. Davidson, president of plaintiff corporation, individually owned Lot 28-J and plaintiff corporation had no interest therein. During the trial below many of the issues were eliminated when the following stipulation was entered into between plaintiff and defendant: •
“It is stipulated by and between counsel for the plaintiff and the defendant, that the defendant and the plaintiff in reconvention is entitled to a credit of fifteen hundred and thirty-five dollars and twenty-nine cents, without prejudice to the defendant or the plaintiff in reconvention’s claim.
“It is further stipulated that the defendant and the plaintiff in reconvention admits the delivery of the articles shown on the respective invoices, save and except one hood, he being charged with two and admits only one, but reservation of rights to the defendant is *53 hereby claimed to show that the prices shown on those invoices are exorbitant, beyond the common ordinary prices prevailing for that material in this vicinity and by other wholesalesmen, and subject to any other rights that we might have under those invoices, but the material was delivered.”
The first part of this stipulation accounts for the judgment allowing a credit to defendant of $1,535.29. Defendant, in his reconventional demand, alleged he was due the sum of $4,756.74. By this stipulation, plaintiff admitted defendant should have credit for $1,535.29 without prejudicing his right to prove the total sum alleged. Even though the stipulation does not so state, it is obvious it relates to profit derived from the sale of the house on Lot 28-J.
Under the last paragraph of the stipulation, it is our opinion defendant admitted delivery of the materials as alleged but reserved the right of proving overcharges, and particularly pursuant to the agreement the prices would not exceed those of Louzan Lumber Company. The only evidence offered toward proof of this claim was the testimony of an employee of Louzan Lumber Company who stated he took plaintiff’s invoices of materials delivered to defendant and made duplicate invoices using amounts on Louzan’s price list. The difference in these amounts totaled the $403.80 claimed by defendant. However, this employee also testified the charge on each item was the current price at the date he made the duplicate invoices, which was approximately March 1, 1961. He further testified building materials rates varied considerably during the year and would rise from April to October and then decline until March. It is shown plaintiff sold the material sued for during July, August and September, 1960, and, as there is no evidence in the record to show Louzan Lumber Company rates on the dates of the sales to defendant, we conclude defendant has failed to prove this item of his reconven-tional demand. There was no other evidence that the prices charged for the materials were exorbitant or out of line. We therefore conclude defendant has not met the burden of proof imposed on him by the stipulations of showing the invoice prices for the materials were incorrect.
Defendant also claims credit in excess of that stipulated in connection with the sale of Lot 28-J from which he was to receive the net profit under an agreement with Davidson. The evidence shows the bank charged Mr. Davidson $300 discount on making a $12,000 loan to finance this property, and then charged $249.66 interest. Defendant claims there was a duplicate charge of $204.09 for air conditioners. Defendant was charged this amount for one air conditioner and then given credit for same on the journal and a balance due at the time was carried forward to the ledger, and thereafter an air conditioner was purchased and charged to defendant. It is true defendant has been charged for two air conditioners but given credit for one and, therefore, the ultimate charge was but for one unit.
Defendant further claims he was charged for two range “hoods” on Lot 28-J, whereas he used only one hood. However, it was admitted he obtained both hoods and used one on the lot in question and the other in another home. Defendant, therefore, owed for both “hoods” and it is immaterial as to which transaction the item was charged.
Relative to the construction on Lot 28-J, Adams also claims he was charged for two other items, $45 to All-State Investment Company, and $56 to Bennett Plan Service, which he claims he paid. However, the record shows Davidson paid these items and does not indicate why Mr. Adams made these payments as they were paid by Mr. Davidson. Therefore, it is our opinion the trial court was correct in concluding plaintiff allowed defendant all the credit to which he was entitled in connection with the sale of the house built on Lot 28-J.
Defendant also claimed other amounts for extra work on various other construction projects. With respect to these claims, *54 we concur with the following conclusion of the trial court:
“It does not appear that defendant kept any hooks. He did not furnish any statement showing what work was done, what was paid for, and what was the balance due. His claims, therefore, will be rejected, especially in view of the fact that Mr. Davidson claims that he paid to defendant all bills that were rendered, and apparently establishes the payment by means of checks in favor of defendant and others covering the items mentioned by defendant.”
Therefore, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.